IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

ROY COCKRUM, ET AL.,

          *Plaintiffs*,

v.

DONALD J. TRUMP FOR PRESIDENT, INC.,

          *Defendant*.

Case No. 3:18-cv-484-HEH

# DEFENDANT DONALD J. TRUMP FOR PRESIDENT, INC.'S BRIEF IN SUPPORT OF MOTION REGARDING PRIVILEGE LOGS

Jeffrey Baltruzak
JONES DAY
500 Grant Street, Suite 4500
Pittsburgh, PA 15219
(412) 391-3939
jbaltruzak@jonesday.com

Michael A. Carvin
William D. Coglianese
Nikki L. McArthur
JONES DAY
51 Louisiana Avenue, NW
Washington, DC 20001
(202) 879-3939
macarvin@jonesday.com
wcoglianese@jonesday.com
nmcarthur@jonesday.com

*Counsel for Donald J. Trump for President, Inc.*

# INTRODUCTION

In this motion, Defendant Donald J. Trump for President, Inc. (the Campaign) requests two items of relief. First, the Campaign respectfully asks the Court to modify Pretrial Schedule A's provision regarding the timing of producing privilege logs. The Campaign fully understands that it is required to produce a privilege log when asserting attorney-client privilege, attorney work-product protection, and other privileges under the Federal Rules. Pretrial Schedule A, however, requires the production of the log within 15 days after the service of the discovery request. That deadline is simply unworkable in light of the likely volume and complexity of discovery in this case. The Campaign instead proposes that the privilege log should be due 14 days following the corresponding production of documents.

Second, the Campaign respectfully asks the Court to clarify that the requirement to produce a privilege log is inapplicable to a claim that documents are protected under the First Amendment. For one thing, requiring a party claiming the protection of the First Amendment to produce a privilege log would itself violate the First Amendment. And even if the Court concludes that the privilege-log requirement applies, the Court should exercise its discretionary authority to waive that requirement—a requirement that, in the context of the First Amendment right, would impose severe burdens but yield few (if any) offsetting benefits.

# ARGUMENT

**I.  The Court Should Modify the Deadline for Producing a Privilege Log.**

Federal Rule of Civil Procedure 26(b)(5) and Pretrial Schedule A (Dkt. 68-1) both require parties asserting privilege to produce a privilege log. The Campaign recognizes that these provisions require a party to produce a privilege log when it asserts attorney-client privilege, attorney work-product protection, or other evidentiary privileges under the common law.

Pretrial Schedule A, however, imposes the further requirement that a privilege log must be served within 15 days of the request for production. *See* Dkt. 68-1 at 4 ("the privilege log [must be] served with the objections to the requests for production"); Local Civil Rule 26 ("any objection … shall be served within fifteen (15) days after the service of the … request"). The Campaign respectfully submits that this deadline is not workable in a case of this complexity. For instance, in a filing in the Roger Stone case, Special Counsel Robert Mueller stated that discovery in that *criminal* case would be "both voluminous and complex," because it would encompass "several terabytes of information" and "communications … span[ning] several years." U.S. Speedy Trial Motion, *United States v. Stone*, No. 1:19-cr-18, Dkt. 19 (D.D.C. Jan. 31, 2019). The discovery in this *civil* case is likely to be even more voluminous and complex, because the limits on civil discovery are looser than the limits on criminal discovery. Indeed, the Court acknowledged the likely complexity of discovery in this case at the hearing on the motion to stay discovery, where it raised the possibility of appointing a special master to oversee discovery. In light of the likely volume and complexity of discovery, it would take far more than 15 days to collect responsive documents, review them for privilege, determine which documents to withhold, and prepare a log of the withheld documents.

This is particularly true given the exceedingly broad discovery requests that Plaintiffs have already propounded. Many of the requests are even broader than those that these same Plaintiffs propounded in their first (failed) attempt at litigating this case, in the district court in the District of Columbia. There, Judge Huvelle rightly recognized that even those *narrower* requests "ask[ed] for everything under the sky," representing an "ill-defined," "overly broad," "not narrowly tailored," "wide-ranging," "thinly-veiled," "speculative," "overreaching" "fishing expedition." *Cockrum v. Donald J. Trump for President, Inc.*, 319 F. Supp. 3d 158, 187–89 (D.D.C.

2018). Although the parties are still meeting and conferring about Plaintiffs' pending requests, the sweeping breadth of those requests underscores how unlikely it is that the Campaign could produce a privilege log within 15 days.

The Campaign proposes that the privilege log should instead be due 14 days after the corresponding production of documents by a party. This will allow the parties to produce documents faster because they will not be required to produce a log simultaneously with the production. The parties will still have more than sufficient time to resolve any privilege disputes.

## II. The Court should also clarify that a party asserting protection under the First Amendment need not produce a privilege log.

Separately, the Court should enter an order clarifying that, when a party asserts that the First Amendment protects it against the compelled disclosure of a document, the party is not required to list that document on a privilege log.

### A. Applying the privilege-log requirement to the First Amendment right would itself violate the First Amendment.

**1.** "Compelled disclosures concerning protected First Amendment political associations have a profound chilling effect on the exercise of political rights." *Perry v. Schwarzenegger*, 591 F.3d 1126, 1135 (9th Cir. 2009). Where a party claims protection under the First Amendment, enforcing the privilege-log requirement would itself violate that party's First Amendment rights. In order to comply with Pretrial Schedule A, a party would be required to disclose "the date, the author, the identity of each recipient, including their job titles at the pertinent time, and the claimed basis for its protection." Dkt. 68-1 at 4. The problem is that these disclosures would themselves reveal information that is protected by the First Amendment. For example, the "compelled disclosure of affiliation" with a political campaign is a "restraint on freedom of association" and thus violates the First Amendment. *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 462 (1958); *see, e.g.*, *Perry*, 591 F.3d at 1134 (noting that even the district court, which *rejected*

3

the claim that the First Amendment shielded political campaign communications, agreed that "the identities" were protected). Disclosing "the author" and "the identity of each recipient" would violate that right.

Similarly, the First Amendment protects the right of members of a political campaign to "exchange ideas and formulate strategy" in private. *Perry*, 591 F.3d at 1142. Disclosing "the date" and "the pertinent time" of each communication would violate that privacy. It would reveal to the Campaign's political adversaries what members of the Campaign were discussing at each step during the presidential campaign. For example, if (hypothetically) the Campaign were to withhold a large set of documents discussing the WikiLeaks release, all dated the night before a campaign rally, the Campaign's political adversaries would be able to infer that the Campaign was discussing whether then-candidate Donald Trump should have discussed the emails at that particular rally. Allowing the Campaign's political opponents to intrude so deeply into the Campaign's formulation of political strategy violates elementary principles of freedom of association.

These concerns are not hypothetical. Plaintiffs' first set of document requests seeks a litany of materials that go to the very heart of the Campaign's First Amendment rights.[1]

- Plaintiffs seek, for instance, "*[a]ll* documents relating to the publication or any other use … of e-mails or other documents, or the contents thereof, taken from the DNC." Ex. A at 6, ¶ 9 (emphasis added). The leaked materials, of course, were of tremendous public interest and became a focal point in the 2016 presidential campaign. To require the Campaign to provide insight into its process of assessing the materials that had leaked and considering their strategic implications would be at odds with the Campaign's right to "exchange ideas and formulate strategy." *Perry*, 591 F.3d at 1142.

---

[1] The Campaign does not attempt to set forth its full First Amendment objection to any particular request at this juncture. The Court has instructed that its ruling on the Campaign's motion to dismiss is imminent, and that the ruling "may very well narrow the scope of discovery and narrow the scope of documents that are being requested." It would be premature for the Campaign to guess at which of Plaintiffs' requests (if any) will remain viable. The examples discussed above are offered simply to illustrate the very real First Amendment concerns that the privilege-log requirement implicates in this case.

4

- Plaintiffs seek "[a]ll documents from 2016 discussing or relating to any assistance that The Trump Campaign had provided, would provide, or could provide to Russia, including but not limited to influencing or attempting to influence any party platform." Ex. A at 9, ¶ 37 (emphasis added). Even setting aside the impossibility of—and the constitutional problems inherent in—a court attempting to decide whether a political party's platform "assist[s]" some foreign nation, providing a privilege log that details which individuals discussed the party's platform would enable Plaintiffs to invade the Campaign's core right to shape its political message in order to appeal to voters. *See Perry*, 591 F.3d at 1138 ("A political campaign's communications and activities 'encompass a vastly wider range of sensitive material' protected by the First Amendment than would be true in the normal discovery context.") (internal citation omitted).

- Plaintiffs also seek "[d]ocuments sufficient to identify *all* of The Trump Campaign's directors, officers, and employees from 2015 to the present." Ex. A at 5, ¶ 1 (emphasis added). Plaintiffs have taken the position during meet-and-confer discussions that "employees" include individuals who were not paid—meaning that Plaintiffs seek to know every individual who volunteered for the Campaign at any point over the past four years. This is irreconcilable with the Supreme Court's recognition that "compelled disclosure of affiliation" with a political campaign is an unconstitutional "restraint on freedom of association." *NAACP*, 357 U.S. at 462; *Perry*, 591 F.3d at 1135.

The First Amendment protects the Campaign from being forced down this path.

**2.** The foregoing is entirely consistent with Rule 26(b)(5), the ultimate source of the requirement to produce privilege logs. As an initial matter, the Rule expressly declares that a party providing a privilege log cannot be required to "reveal[] information itself privileged or protected." Fed. R. Civ. P. 26(b)(5)(A)(ii). So where, as here, creation of a privilege log would necessarily entail "revealing information itself privileged or protected," the Rule itself suspends the privilege-log requirement.

More broadly, Rule 26's conception of privilege specifically contemplates heightened protection for privileges grounded in the Constitution. The Rule requires production of a privilege log when a person "claim[s] that the information is privileged." This is the means of effectuating the right, set forth in Rule 26(b)(1), to limit discovery to "nonprivileged matters." "The privileges referred to in Rule 26(b)(1) are those privileges embodied in Rule 501 of the Federal Rules of Evidence." *Maertin v. Armstrong World Indus., Inc.*, 172 F.R.D. 143, 146 (D.N.J. 1997);

5

*see also Matter of Int'l Horizons, Inc.*, 689 F.2d 996, 1002 (11th Cir. 1982) ("The meaning of the term 'privileged' under Rule 26(b)(1) is determined by reference to the Federal Rules of Evidence," and specifically "Federal Rule of Evidence 501," which "sets forth the rules of evidentiary privilege as they are to be applied in federal courts."). And Rule 501, in turn, provides that "[t]he common law … governs a claim of privilege *unless* … the United States Constitution" "provides otherwise." Fed. R. Evid. 501 (emphasis added). This confirms both that the Federal Rules contemplate—as they must—privileges grounded in the Constitution, and that any *constitutional* privilege supersedes the normal procedures for protecting *judicially developed* privileges. Both conclusions are of course essential, given the Constitution's role as "the supreme law of the land." U.S. Const. art. VI, § 2.

**3.** This conclusion finds further support in the Rules Enabling Act, which states that the "rules shall not abridge, enlarge or modify any substantive right." 28 U.S.C. § 2072(b). If the privilege-log requirement were interpreted to apply to the First Amendment privilege, Rule 26(b)(5) *would* "abridge … or modify" the "substantive right" to freedom of speech—specifically, by depriving a party of that right unless the party takes the step of filing a privilege log.

\* \* \* \* \*

For all of these reasons, the Campaign respectfully requests that the Court enter an order clarifying that the First Amendment protects the Campaign from having to produce a privilege log to the extent that it claims responsive documents are protected by the First Amendment.

**B.** **Even assuming that the privilege-log requirement otherwise applies, this Court should exercise its discretionary authority to waive that requirement.**

Even if the Court were to conclude that the privilege-log requirement applies to claims of privilege under the First Amendment, the Court should exercise its inherent authority to waive that requirement. As the district court explained in *Perry v. Schwarzenegger*, "no rule prevents

6

the court from waiving the privilege log requirement." 268 F.R.D. 344, 353 (N.D. Cal. 2010). The court in that case thus exercised its discretionary authority to grant such a waiver, in order to "reduce the burden" on organizations that had taken part in the political campaign against California's Proposition 8. *Id.* The same waiver would be warranted here.

A waiver is justified because of the unique features that distinguish the First Amendment "privilege" from other evidentiary privileges. The evidentiary privileges to which the privilege-log requirement ordinarily applies—attorney-client, priest-penitent, and so forth—are generally *relationship-based*. These privileges apply only where the communication is made in the context of a specific type of relationship, and only where the communication and the relationship satisfy various technical requirements. The privilege-log requirement ensures that the opposing party can test whether the party claiming privilege has satisfied all of these technical requirements. For example, in the context of attorney-client privilege, it enables the opposing party to test whether one participant in the communication was really an attorney, whether the other participant was really a client, whether the subject-matter really related to the provision of legal advice, and so forth. The First Amendment right to maintain the privacy of one's associations, by contrast, is fundamentally different. It is a *structural* privilege rooted in the claiming party's identity as a political campaign—not in the technicalities of the relationship between the specific individuals involved in the communication. As a result, there is no need for a privilege log complete with dates, times, and identities.

A waiver is also justified because of the severe burdens that the privilege-log requirement would impose on the Campaign. Ordinary evidentiary privileges, such as the attorney-client privilege, are likely to apply only to a discrete set of materials. And those materials are relatively easy to identify in the course of reviewing potentially responsive documents: communications

between an attorney and client are potentially subject to the attorney-client privilege, documents produced by an attorney custodian are potentially subject to the attorney work-product protection, and so on. The subset of documents that raise one of these flags can then be reviewed for potential inclusion in a privilege log. In contrast, the First Amendment would protect a vast range of materials produced by a political campaign—every communication about campaign tactics, every memo about long-term strategy, and every discussion about campaign messaging, for starters. And there is no straightforward means of flagging those documents that the First Amendment protects—the documents or communications of literally any individual associated with a political campaign could be subject to this protection. A proper privilege log would thus necessitate a full-blown analysis of the substance of every single responsive document. Requiring the Campaign to undertake this process would be exceedingly burdensome—a conclusion that is driven home by Plaintiffs' quite aggressive (to say the least) approach to discovery. *Supra* at 2–3. Just as the court did in *Perry*, the Court should "waiv[e] the privilege log requirement" in order to "reduce the burden on the [Campaign]." 268 F.R.D. at 353.

At a minimum, the Court should not require the Campaign to produce a privilege log for materials protected under the First Amendment until after the Court has ruled on the Campaign's pending motion to dismiss. Until that ruling issues, the Campaign cannot know what documents are conceivably responsive to any requests. Further, the First Amendment privilege's applicability depends on a balancing test under which "the burdens imposed on individuals and associations" are balanced "against the significance of the interest in disclosure." *Perry*, 591 F.3d at 1140; *see also, e.g.*, *AFL-CIO v. F.E.C.*, 333 F.3d 168, 176 (D.C. Cir. 2003) (same). It is, of course, impossible to assess "the significance of the interest in disclosure"—and thus to conduct any balancing—until the Court has ruled on the extent to which Plaintiffs' claims can proceed.

8

## CONCLUSION

The Campaign respectfully requests that the Court (1) modify Pretrial Schedule A's provision regarding the timing of producing privilege logs, such that the parties' privilege logs shall be due 14 days following the corresponding document production; and (2) clarify that the requirement to produce a privilege log is inapplicable to a claim that documents are protected under the First Amendment.

Dated: February 26, 2019

Jeffrey Baltruzak*
JONES DAY
500 Grant Street, Suite 4500
Pittsburgh, PA 15219
(412) 391-3939
jbaltruzak@jonesday.com

Respectfully submitted,

/s/ Nikki L. McArthur
Michael A. Carvin*
William D. Coglianese*
Nikki L. McArthur (Virginia Bar No. 84174)
JONES DAY
51 Louisiana Avenue, NW
Washington, DC 20001
(202) 879-3939
macarvin@jonesday.com
wcoglianese@jonesday.com
nmcarthur@jonesday.com

*Pro hac vice*

*Counsel for Donald J. Trump for President, Inc.*

9

## CERTIFICATE OF SERVICE

I certify that on February 26, 2019, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notice of electronic filing to all registered parties.

Dated:   February 26, 2019                         /s/ Nikki L. McArthur
                                                    Nikki L. McArthur
                                                    *Counsel for Donald J. Trump for President, Inc.*